UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

| | | |
|---|---|---|
| RADISSON HOTELS INTERNATIONAL, INC., a Delaware corporation, | ) ) ) | CASE NO. _____ |
| Plaintiff, | ) ) ) | |
| vs. | ) ) | |
| ROBERTS HOTELS MANAGEMENT SPARTANBURG, LLC, a Missouri limited liability company; and ROBERTS HOTELS SPARTANBURG, LLC., a Missouri limited liability company, | ) ) ) ) ) ) ) | **COMPLAINT** |
| Defendants. | ) | |

Plaintiff Radisson Hotels International, Inc., for its complaint against Defendants Roberts Hotels Management Spartanburg, LLC and Roberts Hotels Spartanburg, LLC, states and alleges as follows:

## THE PARTIES

1.  Plaintiff Radisson Hotels International, Inc. ("Radisson") is a corporation organized under the laws of the state of Delaware with its principal place of business located at 701 Carlson Parkway, Minnetonka, Hennepin County, Minnesota.

2.  Radisson is a well-known licensor of quality guest lodging systems, including the Radisson® System. Currently, over 400 Radisson® guest lodging facilities exist and operate throughout the United States and abroad. Each Radisson guest lodging facility exists and operates either under direct management by Radisson's affiliate or wholly owned subsidiary or under a franchise or license agreement pursuant to which

Radisson exerts certain controls to assure protection of the Radisson trade name, trademarks and service marks.

3. Upon information and belief, Defendant Roberts Hotels Management Spartanburg, LLC ("RHMS") is a Missouri limited liability company with its principal place of business located at 1408 North Kingshighway, Suite 300, St. Louis, Missouri 63113.

4. Upon information and belief, Defendant Roberts Hotels Spartanburg, LLC ("RHS") is a Missouri limited liability company with its principal place of business located at 1408 North Kingshighway, Suite 300, St. Louis, Missouri 63113.

## BRIEF SUMMARY OF THE ACTION

5. Plaintiff Radisson is a well-known licensor of quality guest lodging systems. Defendants RHMS and RHS own, operate and/or manage hotel properties.

6. Pursuant to a written license agreement with Radisson, with an effective date of November 6, 2006, RHMS was granted the right to renovate and operate a guest lodging facility located at 9027 Fairforest Road, Spartanburg, South Carolina as a Radisson® Hotel class System Hotel (the "Hotel").

7. RHMS' payment and performance obligations under the License Agreement were guaranteed by Roberts Hotels Spartanburg, LLC ("Guarantor") pursuant to a Guaranty of License Agreement ("Corporate Guaranty").

8. Pursuant to the terms of the License Agreement, RHMS was required to operate the Hotel pursuant to certain system standards prescribed by Radisson, including

the requirement that it meet certain minimum Medallia Guest Satisfaction Index ("GSI") ratings.

9. RHMS breached its obligations under the License Agreement by failing to maintain the required minimum GSI ratings and was given written notice to cure its default by improving its GSI rating.

10. Ultimately, RHMS failed to cure this default and Radisson notified RHMS that the License Agreement would terminate effective July 12, 2010.

11. Defendants collectively owe Radisson past due fees in the amount of $63,033.63, plus liquidated damages in the amount of $88,872.10, for a total of $151,905.73, as a result of RHMS' default and resulting premature termination of the License Agreement.

12. Radisson brings this action to recover past due amounts and the liquidated damages it is entitled to under the terms of the License Agreement and Corporate Guaranty.

## JURISDICTION AND VENUE

13. This action primarily involves the breach of the License Agreement between Radisson and RHMS and breach of the Corporate Guaranty.

14. The amount in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs, and this lawsuit is between citizens of different States. This Court therefore has diversity jurisdiction over this case pursuant to 28 U.S.C. § 1332.

15. Venue is proper in this District pursuant to Article 25.4 of the applicable License Agreement, and the corresponding Corporate Guaranty, which state that "all Claims arising out of or related to this Agreement in any way, must be commenced, filed and litigated before a court of competent jurisdiction located in Hennepin County, Minnesota. Licensee submits to personal jurisdiction of the state and Federal courts in such county for such purpose." Further, venue is proper under 28 U.S.C. § 1391(a) because a substantial part of the events giving rise to the claims herein occurred in this District.

## BACKGROUND FACTS

### A.    The Radisson® Franchise System

16. Radisson licenses a system for the operation of various types of hotels ("System Hotels") employing a proprietary and distinctive system (the "System") described in detail in the Radisson License Agreement and franchise disclosure documents. The System, developed and owned by Radisson, as modified by Radisson from time to time, is a system for the construction or renovation and operation of System Hotels of a distinctive character, including the Marks that identify System Hotels' affiliation with the System, the Confidential and Proprietary System Information, the Operating Manual, and all good will associated with the System. Specifically, the System is identified by the name Radisson® and certain other trademarks owned by Radisson (the "Radisson® Marks").

17. Radisson has franchised and licensed entities and persons to use the Radisson® Marks.

18. Radisson has spent large sums of money advertising and promoting its Radisson® Marks throughout the United States, including the state of South Carolina.

19. As a result of the efforts and expenditures of Radisson, the name Radisson® has become associated in the minds of the consumer public with hotels of consistently high quality, operated by persons following substantially similar operating methods and procedures.

**B.     The Radisson® License Agreement and Corporate Guaranty**

20. Radisson and RHMS entered into a written license agreement with an effective date of November 6, 2006, granting RHMS a non-exclusive license to renovate and operate a hotel in compliance with the License Agreement and the System. The Hotel was required to be a Hotel class System Hotel with no less than 200 guestrooms available for rental to guests. A true and correct copy of the License Agreement is attached as Exhibit A.

21. The License Agreement, among other things, granted RHMS the right to the use of the Radisson® Marks and use of Radisson's proprietary reservation system until December 31, 2026. In exchange, the License Agreement required RHMS to pay to Radisson certain fees over the term of the license, including an initial fee, royalty fees, reservation fees, and marketing contribution fees, etc. The License Agreement also required RHMS to renovate, operate and maintain the Hotel according to certain standards specified therein.

22. At or about the same time that Radisson and RHMS executed the License Agreement, Guarantor signed the Corporate Guaranty. A true and correct copy of the Corporate Guaranty is attached as Exhibit B.

23. Under the terms of the Corporate Guaranty, Guarantor agreed that it would make full and prompt payment to Radisson of all amounts due or payable by RHMS to Radisson under the License Agreement, including attorneys' fees.

24. Article 13.2 of the License Agreement sets forth that RHMS is required to "Operate the Hotel in accordance with the Operating Manuals as they exist from time to time."

25. Article 13.2 further states that "Radisson has the right to modify the Operating Manuals at any time. Radisson will make all such modifications available to System Licensees at or about the same time. Licensee will ensure that the Hotel's managers have access to and know how to access the electronic form of the Operating Manual."

26. Radisson promulgates several Operating Manuals for use by its licensees, including, but not limited to, Radisson's Standards of Service and Operations Standards manual ("Operations Manual").

27. Standard 101 of the Operations Manual sets forth, in part, that "hotels are required to maintain a minimum Medallia Guest Satisfaction Index rating of 7.6." This rating is calculated on a rolling 12 month period, or, for new hotels entering the brand, upon the later of (i) three full calendar months; or (ii) when the sample size reaches 70 responses.

28.     Pursuant to Article 5.2 of the License Agreement, RHMS agreed to pay Radisson a Royalty Fee, as follows:

> During Agreement Year 1, Licensee will pay Radisson a Royalty Fee equal to two and one-half percent (2.5%) of daily Gross Room Revenue. During Agreement Year 2, Licensee will pay Radisson a Royalty Fee equal to three percent (3%) of daily Gross Room Revenue. During Agreement Year 3, Licensee will pay Radisson a Royalty Fee equal to three and one-half percent (3.5%) of daily Gross Room Revenue. During Agreement Year 4 and continuing through the term of the Agreement, Licensee will pay Radisson a Royalty Fee equal to four percent (4%) of daily room Gross Revenue. Licensee will not cause Gross Room Revenue to be reduced in order to increase business or revenues from Licensee's or the Hotel's other activities or operations.

29.     Pursuant to Article 5.3, RHMS agreed to pay Radisson a Marketing Contribution Fee, as follows:

> During Agreement Year 1 through Agreement Year 3, Licensee will pay Radisson a Marketing Contribution equal to one percent (1%) of daily Gross Room Revenue. During Agreement Year 4 and continuing through the term of the Agreement, Licensee will pay Radisson a Marketing Contribution equal to one and one-half percent (1.5%) of daily room Gross Revenue.

30.     Pursuant to Article 5.4, RHMS agreed to pay Radisson a Reservation Fee equal to two percent (2%) of daily Gross Room Revenue, plus $3.75 for each reservation delivered through the Third Party Systems.

31.     Pursuant to Article 5.5, RHMS agreed to pay Radisson "any fees assessed with respect to Marketing and System standards, programs and initiatives that exist now or in the future and are implemented generally for System Hotels or groups of System Hotels."

32. Pursuant to Articles 5.7 and 5.8 of the License Agreement, RHMS agreed that "Licensee will pay Radisson interest on any amounts owed to Radisson that are past due at the lesser of one and one-half percent (1.5%) per month or the maximum rate of interest permitted by applicable law."

33. Pursuant to Article 17.1 of the License Agreement, RHMS agreed that certain events would constitute a material default of the Agreement and entitle Radisson to terminate the Agreement should it fail to make timely cure of these defaults.

34. Pursuant to Article 17.2 of the License Agreement, RHMS acknowledged that the following are, without limitation, events of material default by Licensee that entitle Radisson to terminate this Agreement upon notice to Licensee subject to the right to cure:

> Failure to comply with (i) any material requirement of the System or this Agreement; or (ii) a sufficient number of non-material System or Agreement requirements, which, collectively, constitute materiality or evidence a disregard for the System or the Marks.

35. Article 17.4 of the License Agreement sets forth that RHMS agrees that should Radisson terminate the License Agreement for RHMS' default, "the actual damages that Radisson would suffer for the loss of prospective fees and other amounts payable to Radisson under Article 5 of the License Agreement would be difficult if not impossible to ascertain. If this Agreement is terminated for Licensee's default, Licensee, within ten days of such termination, will pay to Radisson as liquidated damages, and not as a penalty, a reasonable estimate of the probable damages that Radisson would suffer for the loss of prospective fees and other amounts payable as Royalty Fees under Article

5, which is calculated as two times the amount payable to Radisson under Section 5.2 for the immediately preceding 12 months.  Licensee must also pay taxes on such payment in accordance with Section 5.9."

36.     Article 17.5 of the License Agreement sets forth that RHMS agrees that the liquidated damages are only in lieu of the actual damages Radisson would suffer under Article 5 as a result of the termination of the License Agreement, and that Radisson may also seek to recover from RHMS all damages of every type and nature that Radisson sustains as a result of the termination.

37.     Article 19.1 of the License Agreement sets forth RHMS' obligations upon termination of the License Agreement, including the obligation to:

> (a)     Pay all amounts due and owing to Radisson and its Affiliates, submit any missing Reports to Radisson or its Affiliates, and deposit with Radisson an amount reasonably estimated by Radisson that will be sufficient to cover the amounts that will become due and owing after the termination or expiration date, attributable to the period prior to such date.

*   *   *

38.     Article 25.13 of the License Agreement states that "[a]ll reasonable and necessary costs and expenses, including attorneys' fees, incurred by Radisson or Licensee in enforcing any provisions of this Agreement, or in defending against any Claims made against one by the other with respect to this Agreement, whether through injunctive relief or otherwise, will be paid to the prevailing party in such action by the other party."

## CONDUCT GIVING RISE TO VIOLATIONS OF LAW

A.   **RHMS' Defaults Under The License Agreement**

39.   By letter dated February 18, 2010, Radisson provided RHMS written notice that it was in default of the License Agreement due to its failure to maintain a minimum Medallia Guest Satisfaction Index (GSI) rating of 7.6, as required by Article 13.2 of the License Agreement and Standard 101 of the Operations Manual.  At the time of the letter, RHMS' 12-month average GSI rating was 7.43, which was below the minimum rating required for Radisson® system hotels.  A true and correct copy of the February 18, 2010, Notice of Default letter is attached as Exhibit C.

40.   As part of the February 18, 2010, Notice of Default letter, RHMS was advised that in order to cure the default, it must improve its rolling 12-month average GSI rating to a level that meets or exceeds the then-current required minimum GSI rating as set forth in the Operations Manual.  RHMS was further advised that although Article 17.2 of the License Agreement provides for thirty (30) days notice to cure the default, "Radisson is providing Licensee with additional time to cure the Default as set forth below:

   1.   <u>Cure</u>.  On or about June 1, 2010 ("Cure Date"), Radisson will determine through Medallia the Hotel's average GSI rating for the preceding 12-month period.  If the Hotel's average GSI rating for the preceding 12-month period, as determined through Medallia on or about the Cure Date, meets the then-required minimum GSI rating as set forth in the Operations Manual, then the Default will be deemed cured.

   2.   <u>Possible One-Time Extension</u>:  If the Hotel's average GSI rating for the preceding 12-month period, as determined through Medallia on or about the Cure Date, does not meet or exceed the then-required minimum GSI rating as set forth in the Operations Manual, but has improved over the

>Hotel's GSI rating of 7.43 as of the time of this Notice, then the cure period for the Default will automatically be extended for three months to August 31, 2010 ("Extended Cure Date"). If the cure period is extended, on or about the Extended Cure Date, Radisson will determine through Medallia the Hotel's average GSI rating for the preceding 12-month period and if the Hotel's GSI rating meets the then-required minimum GSI rating as set forth in the Operations Manual, then the Default will be deemed cured. Licensee shall not be entitled, and Radisson shall have no obligation, to extend the cure period beyond the Extended Cure Date."

41. The Notice further advised RHMS that if the Hotel's average GSI rating for the preceding 12-month period as determined through Medallia (either on the Cure Date or the Extended Cure Date) does not meet the then-required minimum GSI ratings as set forth in the Operations Manual, RHMS will be deemed to have failed to cure the Default and Radisson will have the right to terminate the License Agreement upon notice to RHMS.

42. By letter dated June 9, 2010, Radisson provided RHMS with written notice that the License Agreement would terminate effective at 11:59 pm Central Time on July 12, 2010, due to RHMS' failure to cure its breach and default of the License Agreement. RHMS was advised that the License Agreement was being terminated because its 12-month average GSI rating had deteriorated to 7.23 since the February 18, 2010, Notice of Default letter. RHMS' 12-month average GSI rating at the time of the Notice of Termination was below both the 7.6 GSI rating required by the Operations Manual and the 7.43 GSI rating that was calculated at the time of the Notice of Default. Accordingly, because RHMS failed to cure the default, and failed to meet the conditions for extending the cure period, Radisson properly terminated the License Agreement. A true and correct copy of the June 9, 2010, Notice of Termination letter is attached as Exhibit D.

43. As part of the Notice of Termination letter, Radisson advised RHMS of, among other things, its contractual duty to remove the Radisson® Marks from the premises of the Hotel, to cease operating the Hotel as a Radisson® System Hotel, to pay past due fees in the amount of $36,843.58, and to pay liquidated damages in the amount of $88,872.10 in accordance with Article 17.4 of the License Agreement. Finally, Radisson advised RHMS that if it did not comply with the post-termination provisions of the License Agreement, Radisson would enforce its contractual rights and ensure compliance with the Agreement.

44. By letter dated December 10, 2010, Radisson sent RHMS a demand for payment in which Radisson sought immediate payment of past due fees in the amount of $62,633.85 and liquidated damages in the amount of $88,872.10, for a total of $151,505.73. As part of the letter, Radisson demanded that payment be made no later than December 23, 2010. A true and correct copy of the December 10, 2010, letter is attached as Exhibit E.

45. The current amount of past due fees through date of termination of the License Agreement is $63,033.63, as set forth in the February 27, 2011, Final Account Statement. A true and correct copy of the February 27, 2011, Final Account Statement is attached as Exhibit F.

46. To date, RHMS has not paid Radisson any of the past due fees or the liquidated damages due under Article 17.4 of the License Agreement. Defendants remain indebted to Radisson in the amount of $151,905.73.

47. In addition, pursuant to Article 25.13 of the License Agreement, Defendants are required to pay to Radisson its reasonable and necessary costs and expenses, including attorneys' fees, incurred in enforcing any provisions of the License Agreement and Corporate Guaranty.

## COUNT I

**BREACH OF LICENSE AGREEMENT AND CORPORATE GUARANTY – FAILURE TO PAY FEES**

48. Radisson hereby incorporates by reference paragraphs 1 through 47 herein.

49. Defendants are in breach of the License Agreement and the Corporate Guaranty as a result of their failure to pay all fees due and owing under the License Agreement.

50. As a result of Defendants' breaches, Radisson has been damaged in the amount of not less than $63,033.63, plus costs, disbursements, interest, and attorneys' fees.

## COUNT II

**BREACH OF LICENSE AGREEMENT AND CORPORATE GUARANTY – FAILURE TO PAY LIQUIDATED DAMAGES**

51. Radisson hereby incorporates by reference paragraphs 1 through 50 herein.

52. Radisson has performed all conditions, covenants and promises required to be performed by it pursuant to the License Agreement, except those conditions, covenants and promises excused and/or waived by Defendants.

53. The License Agreement constitutes a lawful and binding contract.

54. The License Agreement expires according to its terms on or about December 31, 2026.

55. By virtue of RHMS' default under and premature termination of the License Agreement, Radisson sustained a loss of future revenue over the remaining term of the License Agreement.

56. Radisson has been damaged by RHMS' breach of its obligation to operate a Radisson® System Hotel for the remaining term of the License Agreement, in an amount contractually agreed to by the parties.

57. Pursuant to Article 17.4 of the License Agreement, upon termination of the License Agreement due to licensee's fault, RHMS agreed that the actual damages that Radisson would suffer for the loss of prospective fees and other amounts payable to Radisson would be difficult if not impossible to ascertain.  Thus, RHMS agreed to pay Radisson as liquidated damages, and not as a penalty, a reasonable estimate of the probable damages that Radisson would suffer arising out of the premature termination of the License Agreement.

58. As a direct result of RHMS' breach of the License Agreement, and Guarantor's breach of the Guaranty, Defendants are liable to Radisson for liquidated damages for the premature termination of the License Agreement in an amount determined under Article 17.4 of the License Agreement to be $88,872.10, plus costs, disbursements, interest, and attorneys' fees.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Radisson Hotels International, Inc. prays for judgment against Defendants Roberts Hotels Management Spartanburg, LLC and Roberts Hotels Spartanburg, LLC, jointly and severally, as follows:

A. For a money judgment against the Defendants, jointly and severally, for damages arising from their breach of the License Agreement and Corporate Guaranty in an amount to be proven at trial, but in no event less than $151,905.95;

B. For an award against the Defendants, jointly and severally, for Radisson's reasonable and necessary costs and expenses, including attorneys' fees, incurred in enforcing the provisions of the License Agreement, in an amount to be proven at trial;

C. For an award against the Defendants, jointly and severally, for prejudgment interest; and

D.  For such other and further relief as the Court deems just and proper.

Dated:  March 28, 2011.  **GRAY, PLANT, MOOTY, MOOTY & BENNETT, P.A.**

By: s/ Kirk W. Reilly
   Kirk W. Reilly (#153370)
   Craig P. Miller (#26961X)
500 IDS Center
80 South Eighth Street
Minneapolis, MN  55402
Telephone:  (612) 632-3305
Facsimile:  (612) 632-4305
Email:  kirk.reilly@gpmlaw.com
Email:  craig.miller@gpmlaw.com

**ATTORNEYS FOR PLAINTIFF RADISSON HOTELS INTERNATIONAL, INC.**

GP:2954232 v1